UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:10-CR-11-CHB-HAI |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JAMES EDWARD BLEVINS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Boom (D.E. 42), the Court considers reported violations of supervised release conditions by Defendant James Edward Blevins.

Then-District Judge Thapar entered Judgment against Defendant in November 2010 after Defendant pleaded guilty to manufacturing 100 or more marijuana plants and being a felon in possession of a firearm. Defendant was sentenced to 120 months of imprisonment followed by eight years of supervised release. D.E. 38. Defendant was released on August 16, 2019. His supervision term is set to expire on August 15, 2027.

**I.**

On January 25, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges three violations. According to the Report,

> On January 22, 2021, the [officer] made contact with Blevins at his home. He provided a urine sample which tested positive for the use of Suboxone on an instant testing device. When questioned about the drug test result, Blevins admitted to using Suboxone on or about January 15, 2021.

Based on this admission, Violation #1 alleges a violation of two conditions of release—the condition prohibiting unlawful use or possession of a controlled substance and the condition prohibiting use of a controlled substance except as prescribed by a physician. This is a Grade C violation.

Based on Defendant's use of Suboxone, Violation #2 charges a violation of the condition prohibiting commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's Suboxone use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

Violation #3 alleges a Grade C violation of the condition that prohibits Defendant from associating with another felon without permission of the probation officer. According to the Report, "On January 22, 2021, when the undersigned made contact with Blevins at his home, George Patrick was present inside the residence. Patrick is currently on supervised release in 6:06-CR-034-DCR-01. Blevins did not have permission to associate with Patrick."

The Court conducted an initial appearance pursuant to Rule 32.1 on February 1, 2021, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 45. At the initial appearance, the United States made an oral motion for interim detention; Defendant requested a general continuance of the detention issue. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on February 22, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 49. Defendant competently entered a knowing, voluntary,

2

and intelligent stipulation to all three violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report. The United States thus established all three violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to a Class A marijuana charge. *See* 21 U.S.C. §§ 841(a) and 851. Such a conviction carries a five-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1 and #3 and a Grade B violation for Violation #2. Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is twelve to eighteen months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

3

§ 3583(b) & (h). Due to his drug trafficking conviction, Defendant faces no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the government requested revocation with twelve months of imprisonment followed by the completion of his existing period of supervised release. The defense argued for drug-abuse treatment in lieu of revocation or revocation with time served followed by outpatient drug abuse counseling.

The government first noted Defendant's positive aspects. According to his probation officer, Defendant is a "pleasant fellow" who has not been difficult to supervise. Even on the day of the drug test, he was cooperative. He admitted his Suboxone use and admitted that the person at his residence was George Patrick. There was also a substantial period where Defendant had been successful on supervision.

But then the government stressed Defendant's potential for violence. Prior to his arrest on the underlying marijuana-cultivation offense, law enforcement was surveilling his growing plot. According to Defendant's PSR,

> On July 15, 2009, law enforcement officers were infiltrating the marijuana plot when James Edward Blevins attempted to run over two of the officers (Kentucky State Police troopers) with his 1989 Toyota pickup truck. Blevins was taken into custody at gunpoint after his truck became disabled trying to leave the area by accelerating up a hill.

PSR ¶ 9. Firearms were then found at Defendant's residence, though Defendant had a prior federal drug felony conviction. *See id.* ¶ 36. For trying to run over the troopers, Defendant was indicted for two state charges of attempted murder. He later pleaded guilty to two counts of first-degree wanton endangerment involving a police officer. *Id.* ¶ 39.

According to the government, Patrick, the felon who was visiting Defendant, has a very violent history, and Defendant and Patrick knew each other prior to Defendant's 2009 arrest. The government argued it was dangerous for two felons with violent pasts to be together, especially if Defendant was using drugs.

The government argued that Suboxone is a drug used to treat opioid addiction, yet Blevins has no history of abusing opiates or opioids. Instead, he has a history of alcohol abuse and marijuana abuse. *See* PSR ¶¶ 56, 57. The government finally noted that Defendant's sentence on the underlying charge was the statutory minimum of ten years' incarceration.

Given the combination of drug use and associating with a violent felon, the government argued that no downward departure from the Guidelines Range was warranted. Instead, taking into consideration Defendant's generally positive disposition toward supervision, the government recommended a revocation sentence at the bottom of the Range.

The defense invoked the drug-treatment exception for mandatory revocation cases under 18 U.S.C. § 3583(d). The defense asked that defendant be released and sent to ongoing patient treatment. According to the defense, Defendant's Suboxone use was an "isolated incident." Defendant had no prior positive drug screens—either in BOP custody or on supervision. He tested negative when he was arrested on the violation warrant. However, he has a history of mental health issues and addiction to alcohol and marijuana. Defendant had been receiving outpatient counseling. But he had knee replacement surgery and the ensuing physical therapy caused him to miss counseling sessions. The defense admitted that nothing in the record supports a finding that Defendant has an opioid addiction, but argued that addiction itself is an underlying mental health issue for Defendant.

Concerning the third violation, the Defense argued that Defendant and Mr. Patrick did not have a regular ongoing relationship. Mr. Patrick was visiting to help Defendant with some bathroom renovations. Defendant had taken Suboxone days earlier that Mr. Patrick's visit.

Defendant declined to address the Court regarding the sentence. Upon questioning, he stated he had taken a 40-hour drug class in prison. He said he had been "clean since 2009." He requested that he be sent to FMC Lexington to be close to his family.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted treatment in lieu of revocation under 18 U.S.C. § 3583(d). *Crace*, 207 F.3d at 835. Here, Defendant states he has not used drugs since his arrest in 2009. He said the 40-hour BOP program made him "realize what [he'd] been doing" in terms of addiction. His probation officer reported that he had avoided abusing opioids after his knee surgery. Defendant's January 15 Suboxone use, while unexplained, does not appear to be part of a larger pattern of drug abuse. Accordingly, Defendant does not appear to be suffering a serious drug addiction, and the treatment he has received has been helpful. The exception of § 3583(d) is not applicable in this case.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The undersigned recommends a sentence of twelve months and a day of imprisonment, followed by continuation of his existing period of supervision, with no new conditions.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Here, Defendant was convicted of a Class A drug trafficking offense and illegal firearm possession. When his marijuana patch was raided, Defendant tried to run over two state troopers. Although the threat of violence from Defendant has diminished, the Court cannot ignore these circumstances from his past

The Court next considers Defendant's history and characteristics. All agree that Defendant is generally truthful and cooperative and pleasant to work with. He is a changed man, and he has some record of compliance on supervision. He has a GED. Yet, his criminal history (Category IV) contains violence and multiple drug offenses. Given Defendant track record of improvement since 2009, the Court recommends a twelve-month-and-a-day revocation sentence to give him an opportunity to prove himself again and earn good-time credit in prison.

The Court also considers the need to deter criminal conduct and protect the public. Defendant's Suboxone use was a federal crime. Someone necessarily had to traffic the Suboxone to him. Defendant's history indicates he can be dangerous when using drugs and alcohol. Accordingly, deterrence and protection factor into the recommended penalty.

Another factor focuses on opportunities for education and treatment. Defendant has availed himself of treatment while imprisoned and while on supervision. Although defense counsel sought ongoing outpatient treatment in lieu of revocation, treatment alone is inadequate under the Guidelines to address the severity of the violations.

The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, this is Defendant's first violation and Defendant admitted his drug use. He has performed well under supervision until now. Yet, his case is not so unusual as to warrant a downward departure.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. A sentence near the bottom of the Range is appropriate. For the reasons discussed herein, the Court finds the recommended sentence is sufficient, but not greater than necessary, to address the pertinent penalty factors.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of all three violations.

2. Revocation with a term of imprisonment of twelve months and one day.

3. Continuation of Defendant's existing period of supervised release, with no extension and no new conditions (*see* D.E. 38), set to expire on August 15, 2027.

4. If possible, that, as requested, Defendant be placed at FMC Lexington or the facility closest to his family.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 26th day of February, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge